# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHSUETTS

| | |
|---|---|
| JANE DOE, a minor, and CATHERINE DOE, her parent and next of friend,<br><br>    Plaintiffs,<br><br>v.<br><br>TOWN OF WALPOLE, WALPOLE PUBLIC SCHOOLS, STEPHEN IMBUSCH, LINCOLN LYNCH, and LEE TOBEY,<br>individually and in their official capacities, | C.A. No. _____ |

**COMPLAINT, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, AND JURY DEMAND**

## I. Introduction

1. Jane Doe[1] is a fifteen year-old female student at Walpole High School who was harassed and bullied at school and online by a group of female students during her freshman year. She and her mother reported the harassment, which included threats of violence, to school officials. However, school officials did nothing to investigate or create a safety plan, contrary to the express requirements of the state's anti-bullying law and the district's bullying plan. One of the bullies later attacked Jane Doe at school, striking her several times in the head and leaving her with a concussion and ongoing symptoms that have interrupted her studies and left her isolated, depressed, alone, and afraid. The actions of school officials and the Town of Walpole amount to deliberate indifference to the rights of Jane Doe under Title IX of the Education Amendments of 1972 and the Fourteenth Amendment of the United States Constitution, causing significant damages and requiring this Court's intervention.

---

[1] Plaintiff is using pseudonyms for herself and her next of friend to protect her identity as a minor. Her actual name is known to Defendants through the events at issue.

## II. Parties

2. Jane Doe is a fifteen year old student at Walpole High School entering her sophomore year in the fall of 2018.

3. Catherine Doe is the parent and next of friend of Jane Doe and resident of Massachusetts.

4. The Town of Walpole is a duly incorporated municipality within the Commonwealth of Massachusetts.

5. Walpole Public Schools is the public school district for the Town of Walpole.

6. Stephen Imbusch is the principal of Walpole High School, an employee of Walpole Public Schools, and, upon information and belief, a resident of Massachusetts.

7. Lee Tobey is the assistant principal of Walpole High School, an employee of Walpole Public Schools, and, upon information and belief, a resident of Massachusetts.

8. Lincoln D. Lynch III is the superintendent of the Walpole Public Schools, an employee of Walpole Public Schools, and, upon information and belief, a resident of Massachusetts.

## III. JURISDICTION

9. This Court has federal question jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331.

## IV. FACTS

10. Jane Doe attended a private Catholic school from first grade through eighth grade. She excelled, earned high marks, and played ice hockey.

11. At the beginning of the 2017-2018 school year, Jane Doe entered ninth grade at Walpole High School (WHS). She took college preparatory courses and honors level courses, including Spanish and History.

12. From around the first month of high school going forward, a group of ninth grade girls began bullying Jane Doe. They regularly called her a bitch while passing her in the hallway; they told her that she should not come to school and told her to kill herself.

13. The ongoing bullying negatively affected Jane Doe's self-esteem and feeling of self-worth, increased her stress and anxiety at school, and created feelings of isolation. During this year Jane Doe lost 25 pounds.

14. At one point a history teacher at the school noticed that Jane Doe was very upset after class and pulled her aside. He told her that he noticed another student, E.S., giving her dirty looks. E.S. was one of the girls that regularly bullied Jane Doe. Upon information and belief, this information was not reported to any higher-level school official.

15. On March 22, Jane Doe received threatening messages on her Instagram account from several of these girls, including E.S. The messages encouraged Jane Doe to kill herself, talked about getting a Glock,[2] threatened violence, and called her a bitch and other names.

16. The following day, March 23, Jane Doe showed the Instagram messages to Assistant Principal Lee Tobey and School Resources Police Officer Tim Songin. The messages that Jane Doe showed Tobey are attached as <u>Exhibit A</u>.

17. Officer Songin said the messages were just "girls being girls."

18. After Jane Doe reported the messages, she was sent home to cool off.

---

[2] A glock is a type of handgun. Jane Doe recognized the term.

19. When Jane Doe left to go home, she received an online message from a girl, J.E., who was in the group of bullies, that said: "whore." J.E. had sent Jane Doe messages the previous summer mocking Jane Doe after Doe's sister had passed away.

20. Later that day, Catherine Doe, Jane Doe's mother, went to the police station and reported the online threats, including the most recent message from J.E. The message from J.E. is attached as Exhibit B.

21. Catherine Doe then went to the school and talked to Tobey about the online threats. After showing Tobey all of the messages sent to Jane Doe between March 22 and 23, Tobey said there was nothing the school could do about it but that she would require the girls to write letters of apology.[3]

22. Upon information and belief, Tobey and Imbusch took no action in response to the online threats and bullying.

The Current Walpole Public School Bullying Policy and Prevent Plan

23. Walpole has established a Bullying Prevention and Intervention Policy (the "Bullying Policy") as required by the Massachusetts Anti-Bullying Law, M.G.L. c. 71, § 370.

24. The Bullying Policy is established by or under the supervision of the Office of Superintendent.

25. The Bullying Policy defines "bullying" as:

> The repeated use by one or more students or school staff member of a written, verbal, or electronic expression or a physical act or gesture or any combination thereof, directed at a target that causes: (i) causes physical or emotional harm to the target or damage to the target's property; (ii) places the target in reasonable fear of harm to himself or of damage to his/her property; (iii) creates a hostile environment at school for the target; (iv) infringes on the rights of

---

[3] Jane Doe never received any letters of apology.

4

        the target at school; or (v) materially and substantially disrupts the education process or the orderly operation of a school.

26. The Bullying Policy defines Cyber-Bullying as:

        bullying through the use of technology or any electronic communication which shall include, but shall not be limited to, any transfer of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photo electronic or photo optical system, including, but not limited to, electronic mail, internet communications, social networking sites, instant messages, or facsimile communications. Cyber-bullying shall also include (i) the creation of a web page or blog in which the creator assumes the identity of another person or (ii) the knowing impersonation of another person as the author of posted content or messages, if the creation or impersonation creates any of the conditions enumerated in clauses (i) to (v), inclusive, of the definition of bullying. Cyber-bullying shall also include the distribution by electronic means of a communication to more than one person or the posting of material on an electronic medium that may be accessed by one or more persons, if the distribution or posting creates any of the conditions enumerated in clauses (i) to (v), inclusive, of the definition of bullying.

27. "Bullying" refers to both bullying and cyberbullying under the Bullying Policy.

28. Under the Bullying Policy, bullying and cyberbullying are prohibiting at a location, activity, function or program that is not school-related or through the use of technology or electronic device that is not owned, leased or used by the Walpole Public Schools if the act or acts in question create a hostile environment at school for the target, infringe on the rights of the target at school, and/or materially and substantially disrupt the education process or the orderly operation of a school.

29. Under the Bullying Policy, bullying and cyber-bullying may occur in and out of school, during and after school hours, at home and in locations outside of the home.

30. Walpole has also established a Bullying Prevention and Intervention Plan ("Bullying Plan").

5

31. The Bullying Plan is established by or under the supervision of the Office of Superintendent.

32. The Bullying Plan provides: "A member of a school staff or an individual contracted by the Walpole Public Schools shall immediately report any instance of bullying that he/she has witnessed or become aware of to the school principal or designee."

33. The Bullying Plan provides: "Staff members shall assess an alleged target's immediate safety needs and implement a plan to ensure safety."

34. Under the section "Investigation," the Bullying Plan provides: "The principal or designee, upon receipt of a *viable report*, shall promptly contact the parents or guardians of a student who has been the alleged target or alleged aggressor. The actions taken to prevent further acts of bullying shall be discussed." (emphasis added.)

35. The Bullying Plan does not define what a "viable" report means.

36. This section differs from the model Bullying Prevention and Intervention Plan published by the Massachusetts Department of Elementary and Secondary Education (the "Model Bullying Plan"). Under "Investigation" in the Model Bullying Plan, the analogous section reads: "The principal or designee will investigate promptly *all reports* of bullying or retaliation and, in doing so, *will consider all available information* known, including the nature of the allegation(s) and the ages of the students involved." (emphasis added).

37. The term "viable report" is not used in the Model Plan.

38. The Bullying Plan differs from the plan that Walpole Public Schools issued in 2010 after the state's anti-bullying law was enacted. At that time, the WPS Safe Schools Initiative published a Bullying Prevention and Intervention Plan (The "2010 Bullying Plan"). The 2010 Bullying Plan is substantially similar to the state's Model Bullying Plan and uses

6

identical language when describing the process for investigations. It does not use the term "viable" to describe reports of bullying.

39. The 2010 Bullying Plan states, among other things, that: "If, after investigation, bullying or retaliation is substantiated, the principal/director will take steps reasonably calculated to prevent recurrence and to ensure that the target is not restricted in participating in school or in benefiting from school activities."

40. This language is not in the current Bullying Plan.

## Failure To Comply With Bullying Plan

41. Upon information and belief, the online messages that were sent to Jane Doe on March 22 and March 23 were not immediately reported to Principal Imbusch, a designee, or any school staff member or an individual contracted by the Walpole Public Schools.

42. After Jane Doe met with Assistant Principal Toby on March 23, no school staff member assessed her immediate safety needs and implemented a plan to ensure her safety.

43. No one from WHS promptly contacted the parents of the girls who sent the messages in question to discuss actions taken to prevent further acts of bullying.

44. Implementing a plan to ensure Jane Doe's safety could have readily been achieved by interviewing her to determine the history of the bullying and who had been involved. Had Imbusch or his designee taken the simple step to ask Jane Doe whether there had been any similar conduct by J.E., E.S., or other girls in that group, school officials would have learned about the face to face bullying that had occurred in the hallways throughout the year.

45. J.E. and Jane Doe had the same gym class together. A safety plan could have been implemented at that time to separate them into different gym classes.

7

46. Imbusch and Tully knew or should have known by March 23 that Jane Doe was being cyber-bullied by other girls, including J.E., threatened with violence by other girls who were friends with J.E., knew that J.E. had a tendency toward physical confrontations with other students, yet knowingly failed to take reasonably available steps to separate Jane Doe and J.E. during school hours.

### The Assault

47. On June 1, 2018, Jane Doe was physically assaulted by J.E. at the end of gym class. The attack was caught on video by a classmate. J.E. punched Jane Doe in the head several times and kicked her legs. Jane Doe immediately went to the nurse and then was sent home. No one from the school called Jane Doe's parents about the attack.

48. The assault left Jane Doe with a severe concussion. She had significant symptoms for weeks, continuing through the time of the filing of this lawsuit, including dizziness, difficulty focusing, headaches, and vomiting. She has had to continue the school year in a concussion protocol, taking her examinations in an empty classroom with little light. Doctors have not indicated an endpoint to her symptoms.

49. Police filed criminal charges against J.E. and a restraining order was issued against her.

50. After the assault, the parents of Jane Doe discovered that J.E. had been suspended by Walpole Public Schools multiple times during the school year, and only a month earlier for attacking another student.

51. Catherine Doe contacted the office of Superintendent Lynch numerous times since the June 1 assault to discuss her concerns but her inquiries were never returned.

52. Eventually, other parents contacted Walpole Public Schools about similar bullying concerns, and the School Committee held a meeting on or about June 13, 2018 to address bullying at WHS.

53. At the meeting, after watching a video of the assault on Jane Doe, Superintendent Lynch said: "It was an assault clearly, bullying is a recurring incident, or an imbalance of power. Clearly there was an imbalance of power."

Policies and Practices

54. Upon information and belief, the Town of Walpole failed to properly train its school officials, including Tobey and Imbusch, in how to respond to reports of possibly bullying incidents, including cyber-bullying between female-students. This policy and practice resulted in Tobey and/or Imbusch not investigating the reports made by Jane Doe and Catherine Doe on March 23 and Imbusch and/or Tobey not developing a safety plan that would have separated Jane Doe and J.E. and, most likely, prevented the assault on June 1.

55. Through their day to day conduct, acts, and omissions, as described above, Imbusch and Tobey establish policies and practices of Walpole High School concerning bullying, including but not limited to gender-based bullying.

56. Through their day to day conduct, acts, and omissions, as described above, Imbusch and Tobey establish the policy and practice that reports of bullying will not be thoroughly investigated, safety plans will not be implemented, and perpetrators of bullying will not be separated from their targets. This policy and practice resulted in Tobey and/or Imbusch not investigating the reports made by Jane Doe and Catherine Doe on March 23 and Imbusch and/or Tobey not developing a safety plan that would have separated Jane Doe and J.E., and, most likely, prevented the assault on June 1.

57. Through their day to day conduct, acts, and omissions, as described above, Imbusch and Tobey made the intentional decision not to investigate reports of bullying. This decision resulted in Tobey and/or Imbusch not investigating the reports made by Jane Doe and Catherine Doe on March 23 and Imbusch and/or Tobey not developing a safety plan that would have separated Jane Doe and J.E., and, most likely, prevented the assault on June 1.

58. Through his oversight of the development of the Bullying Plan, Lynch establishes Walpole's policies and practices concerning bullying intervention and prevention, including but not limited to the decision to establish the current WPS Bullying Plan which deviates substantially from the Model Bullying Plan issued by the Department of Elementary and Secondary Education.

59. Upon information and belief, it is the actual custom, practice, and policy of WPS and WHS, through its policy-makers, not to investigate reports of bullying. This policy and practice resulted in Tobey and/or Imbusch not investigating the reports made by Jane Doe and Catherine Doe on March 23 and Imbusch and/or Tobey not developing a safety plan that would have separated Jane Doe and J.E.., and, most likely, prevented the assault on June 1.

60. Cyber-bullying, particularly involving female students, has been widely reported in the media in recent years, sometimes with tragic endings. Defendants knew or should have known that Jane Doe's report on March 23 was a report of cyber-bullying and a uniquely gender-based example of bullying, triggering obligations under Title IX.

## COUNT I

**(42 U.S.C. § 1983)**
**(Individual Defendants)**

The actions of the individual Defendants as described above, including, *inter alia*, deliberately disregarding the harassment of and threats toward Jane Doe, while knowing that they occurred due to her gender, violates Jane Doe's rights under the Fourteenth Amendment to the United States Constitution, causing damages.

## COUNT II

**(42 U.S.C. § 1983)**
**(Town of Walpole)**

The actions of Defendant Town of Walpole as described above, including, *inter alia*, failing to properly train its officials and teachers in identifying, responding to, and preventing gender-based harassment and bullying, failing to comply with its Bullying Prevention and Intervention Plan regarding Jane Doe, and failing to prevent gender-based harassment and bullying of Jane Doe, violates Jane Doe's rights under the Fourteenth Amendment to the United States Constitution, causing damages. This claim is pursued under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

## COUNT III

**(Title IX of Education Amendments of 1972)**

The actions of Defendants as described above, including, *inter alia*, deliberately disregarding the harassment of, and threats toward, Jane Doe while knowing that it occurred due to her gender, constitute discrimination on the basis of gender, causing damages.

## COUNT IV

### (Preliminary and Permanent Injunctive Relief)

Defendants must immediately comply with guidelines under Title IX and the Bullying Prevention and Intervention Plan, investigate all reports of bullying and cyberbullying promptly, and take all necessary remedial and disciplinary measures to prevent any further gender-based bullying and cyberbullying.

WHEREFORE, Plaintiff prays this Court:

1. ORDER the Defendants to take all necessary and appropriate actions to prevent the gender-based harassment and bullying of Plaintiff;

2. ORDER the Defendants to comply with its Bullying Prevention and Intervention Plan in responding to gender-based harassment and bullying of Plaintiff;

3. ORDER the Defendants to pay compensatory damages to Plaintiff for emotional distress and pain and suffering and any other damages as allowed by law;

4. Order the Defendants to pay punitive damages and reasonable attorneys' fees;

5. Any further relief as is just and necessary.

Respectfully submitted,

PLAINTIFF JANE DOE., a minor, by her parent and next friend CATHERIEN DOE,

By her attorneys,

**/s/ Joseph L. Sulman**
Joseph L. Sulman, BBO #663635
Andrea L. Haas, BBO # 671844
Law Office of Joseph L. Sulman, Esq.
391 Totten Pond, Suite 402
Waltham, MA 02451
(617) 521-8600
jsulman@sulmanlaw.com
ahaas@sulmanlaw.com

August 14, 2018